## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OWEN F. SILVIOUS,<br><br>                   Plaintiff,<br>   v.<br><br>AKZO NOBLE, INC., et al.,<br><br>                   Defendants. | Civil Case No. 10cv0969-JDB<br><br>The Hon. John D. Bates |

### DOMESTIC DEFENDANTS' MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Akzo Nobel, Inc., Arkema, Inc. (formerly known as Atofina Chemicals Inc.),[1] Evonik Degussa Corporation,[2] EKA Chemicals, Inc., FMC Corporation, Solvay America, Inc., and Solvay Chemicals, Inc. (collectively "Domestic Defendants"),[3] move to dismiss the Complaint, as amended, of plaintiff Owen F. Silvious ("Plaintiff").  For the reasons set forth in the accompanying Memorandum of Points and Authorities, the Domestic Defendants respectfully request that the Plaintiff's claims be dismissed with prejudice and in their entirety for failure to state a claim.

---

[1] The Complaint identifies Arkema, Inc. and Atofina Chemicals, Inc. as two separate defendants, but in fact, Atofina Chemicals, Inc. is merely a former name of Arkema, Inc. and does not have a separate existence.

[2] The Complaint identifies "Degussa Corporation (Evonik Degussa Corp)" as a defendant.  Degussa Corporation no longer exists.

[3] The Complaint also names as defendants the following foreign entities purportedly located in other countries:  Akzo Nobel Chemicals International B.V., "Degussa A.G." (which no longer exists), and Solvay S.A. (collectively "Foreign Defendants").  None of the Foreign Defendants have been served and they are not presently subject to the personal jurisdiction of either this Court or the Superior Court of the District of Columbia. Accordingly, none of the Foreign Defendants join this Motion to Dismiss.

Dated:  June 16, 2010                                    Respectfully submitted,


_ /s/ Kevin D. Feder_____
Michael E. Antalics (D.C. Bar No. 475218)
mantalics@omm.com
William T. Buffaloe (D.C. Bar No. 476929)
wbuffaloe@omm.com
Kevin D. Feder (D.C. Bar No. 986131)
kfeder@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
T: (202) 383-5300
F: (202) 383-5414
***Counsel for Defendant Evonik Degussa Corp.***

Katherine A. Allen (D.C. Bar No. 502453)
katherine.allen@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, NW, Suite 300
Washington, DC 20006
T: (202) 452-5483
F: (202) 452-7989
***Counsel for Defendant Arkema Inc.***
***(f/k/a Atofina Chemicals Inc.)***

Paul H. Friedman (DC Bar No. 290635)
paul.friedman@dechert.com
DECHERT LLP
1775 Eye Street NW
Washington, DC  20006
P: (202) 261-3398
F: (202) 261-3098
***Counsel for Defendant FMC Corporation***

D. Jarrett Arp (D.C. Bar No 444201)
jarp@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
T: (202) 298-5700
F: (202) 298-5907
***Counsel for Defendants EKA Chemicals, Inc. and***
***Akzo Nobel, Inc.***

Bradley P. Smith (D.C. Bar No. 468060)
smithbr@sullcrom.com
SULLIVAN & CROMWELL, LLP
125 Broad Street
New York, NY 10004-2498
P: (212) 558-4000
F: (212) 558-3588
***Counsel for Defendants Solvay America, Inc. and
Solvay Chemicals, Inc.***

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OWEN F. SILVIOUS, | Civil Case No. 10cv0969-JDB |
| Plaintiff, | |
| v. | The Hon. John D. Bates |
| AKZO NOBLE, INC., et al., | |
| Defendants. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DOMESTIC DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Complaint of plaintiff Owen F. Silvious ("Plaintiff"), as amended, should be dismissed in its entirety because (1) Plaintiff fails to state a claim and lacks standing to pursue his cause of action under the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.*, and (2) the cause of action he has asserted is time-barred under the applicable District of Columbia statute of limitations.[1]

Plaintiff does not allege, and cannot allege, that the hydrogen peroxide that Domestic Defendants sell is a "consumer good or service" as defined by the CPPA, and thus he cannot bring an action under the CPPA. Moreover, plaintiff, who is currently a federal inmate in North

---

[1] This Motion to Dismiss is brought on behalf of defendants Akzo Nobel, Inc., Arkema, Inc. (formerly known as Atofina Chemicals Inc.), Evonik Degussa Corporation, EKA Chemicals, Inc., FMC Corporation, Solvay America, Inc., and Solvay Chemicals, Inc. (collectively "Domestic Defendants"). The Complaint identifies Arkema, Inc. and Atofina Chemicals, Inc. as two separate defendants, but in fact, Atofina Chemicals, Inc. is merely a former name of Arkema, Inc. and does not have a separate existence. The Complaint also identifies "Degussa Corporation (Evonik Degussa Corp)" as a defendant, however, Degussa Corporation no longer exists. Lastly, the Complaint names as defendants the following foreign entities purportedly located in other countries: Akzo Nobel Chemicals International B.V., "Degussa A.G." (which no longer exists), and Solvay S.A. (collectively "Foreign Defendants"). None of the Foreign Defendants have been served and they are not presently subject to the personal jurisdiction of either this Court or the Superior Court of the District of Columbia. Accordingly, none of the Foreign Defendants have joined this Motion to Dismiss.

Carolina, does not allege that he is or ever was a resident of the District of Columbia, or even that he purchased hydrogen peroxide in the District of Columbia.  As a result, he is not a proper party to bring a class action (whether denominated as such or as a private attorney general action)[2] on behalf of consumers in the District of Columbia.

In addition to the Plaintiff's lack of standing, his underlying claim is also time-barred as a matter of law because it was not brought within four years of when Plaintiff knew or should have known that he sustained damages as a result of Defendants' alleged wrongdoing.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Defendants are manufacturers of highly-concentrated hydrogen peroxide, "[a]n inorganic liquid", sold for industrial and commercial use, "most prominently as a bleach in the pulp and paper industry with smaller amounts appearing in chemicals and laundry products, environmental applications, textiles, and electronics." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008).  On May 3, 2010, Plaintiff filed his complaint in the Superior Court of the District of Columbia, Civil Division, captioned *Owen F Silvious v. Akzo Noble* [sic], *Inc.*, No. 0003350-10 ("Complaint," attached hereto as Exhibit A), alleging claims on behalf of indirect purchasers of hydrogen peroxide under the District of Columbia CPPA.  A copy of the Summons, Complaint, and Initial Order was sent by mail to the Domestic Defendants on May 17, 2010.  On May 26, 2010, the Plaintiff filed by mail certain amendments to his Complaint

---

[2] The Plaintiff brings this action under the CPPA on behalf of the "general public," meaning "individuals who resided in the District of columbia [sic], individuals who worked in the District of Columbia[,] and individuals who visited the District of Columbia during the period between October 19, 2000 and January 31, 2005." (Ex. A, Compl. ¶ 18.)  The D.C. Superior Court has held that such a suit under the CPPA for money damages on behalf of third parties, such as the general public, must be brought as a class action under Rule 23.  *See Margolis v. U-Haul Int'l, Inc.*, No. 2007 CA 005245 B, 2009 D.C. Super. LEXIS 8, at *4, 25-26 (D.C. Super. Ct. Dec. 17, 2009).  The *Margolis* court dismissed the plaintiff's claims to the extent they sought money damages on behalf of third parties because the plaintiff did not comply with the class action requirements of Rule 23.  After dismissal, the plaintiff in *Margolis* filed an amended complaint in the Superior Court, "in a representative capacity on behalf of the general public," styled this time as a class action pursuant to "Superior Court Rule 23(a)."  *See* Amended Complaint, *Margolis v. U-Haul Int'l, Inc.*, No. 2007 CA 005245 B (D.C. Super. Ct. Jan. 15, 2010).

("Amendments," attached hereto as Exhibit B).  On June 10, 2010, the Domestic Defendants

timely filed with this Court a Notice of Removal under 28 U.S.C. § 1446(b).

In addition to the instant Motion to Dismiss, the Domestic Defendants also plan to file a

Notice of Tag-Along Action with the MDL Panel so that this matter can be consolidated with

dozens of similar cases that have previously been consolidated and are now pending before the

Honorable Stewart Dalzell in the United States District Court for the Eastern District of

Pennsylvania.  *See In re Hydrogen Peroxide Antitrust Litig.*, Civ. A. No. 05-666, MDL Docket

No. 1682 (E.D. Pa.).  The first of these prior cases was filed more than five years ago on

February 11, 2005, and throughout 2005, a total of forty-five lawsuits were filed alleging

damages arising from the same conduct that Plaintiff describes in this case.  In fact, more than

four years before Plaintiff filed his Complaint, one of the defendants here publicly admitted to

price-fixing as part of the MDL proceeding, and another defendant entered into a plea agreement

with the United States Department of Justice ("DOJ") in which it admitted wrongdoing and paid

a fine totaling more than $40 million.  Indeed, in his Complaint, the Plaintiff refers to both the

MDL proceeding and the plea agreement to support his claim.  (Compl. ¶¶ 21-22, 24.)

## ARGUMENT

### I.   Plaintiff, Who Is Not A Resident of the District of Columbia, Lacks Standing to Assert His Claims Under the CPPA.

According to the Complaint, "Plaintiff is a legal resident of the State [sic] of Virginia",

(Compl. ¶ 5), although he is currently serving a prison sentence in the federal correctional

facility located in Butner, North Carolina.[3]   Plaintiff does not allege that he is or ever was a

---

[3] Mr. Silvious is obviously not a proper party to assert a claim as a "private attorney general" on behalf of the residents of the District of Columbia.  In addition to being a resident of Virginia, he is currently serving a federal sentence for his involvement in a $1 million mail fraud scheme.  *See United States v. Silvious*, 512 F.3d 364, 367 (7th Cir. 2008).  He had previously been convicted of wire fraud and bank fraud in federal court in Virginia.  *United States v. Silvious*, 946 F.2d 888 (4th Cir. 1991).  Moreover, Mr. Silvious has recently been found to have lied under

resident of the District of Columbia.  Nor does the Complaint allege that Plaintiff ever purchased

hydrogen peroxide in the District of Columbia.[4]  Relevant precedent from District of Columbia

courts and other jurisdictions demonstrates that in this case, Plaintiff has no standing to assert a

claim for relief under the CPPA.

This court has previously held that the District of Columbia's courts "apply in every case

the 'constitutional' requirement of a 'case or controversy' and the 'prudential' prerequisites of

standing." *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177-78 (D.D.C. 2003) (citing

*Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1206 (D.C. 2002)) (internal

citations omitted); *see also Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 28 (D.D.C. 2007)

(noting that although the CPPA's language "might suggest that a plaintiff could pursue a claim

under the DCCPPA without an actual or threatened injury, the cases hold otherwise.").

In *Baker v. Family Credit Counseling Corp.*, the district court explained that although

there was "no decision by a Pennsylvania state court limiting application of [Pennsylvania's

Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201 *et seq.* (UTPCPL)] to

Pennsylvania residents … applying federal law, the Court agrees with defendants that the

UTPCPL provides a remedy only to Pennsylvania residents."  440 F. Supp. 2d 392, 413 (E.D.

Pa. 2006).  The Court reasoned that "states have a strong interest in applying their own consumer

protection laws to their citizens", and cited to a prior district court opinion explaining that

---

oath to the federal court overseeing the settlement of a class action in Florida.  *See* Order, *Solo v. Chiquita Int'l Brands, Inc.*, No. 05-cv-61335-AJ (S.D. Fla. Mar. 25, 2008) (a copy of which is attached hereto as Exhibit C).  This case follows another recent lawsuit filed by Mr. Silvious allegedly on behalf of  "general public" under the CPPA. *See Silvious v. Ungar's Food Prods., Inc.*, No. 10-cv-00639-JDB (D.D.C.).

[4] The Complaint alleges only Plaintiff "visited the District of Columbia more than fifty times" and that he "purchased indirectly Hydrogen Peroxide manufactured by one or more of the defendant[s]."  (Compl. ¶ 5.) Nowhere does the Complaint allege that he ever actually purchased hydrogen peroxide in the District of Columbia, nor should the Complaint be read to imply that key fact.  It is not reasonable to assume that Plaintiff is claiming that he purchased hydrogen peroxide on each—or indeed any—of his alleged 50 visits to the District of Columbia.  In the absence of any allegation that Plaintiff actually purchased hydrogen peroxide in the District of Columbia, he lacks standing to bring a claim under the CPPA for the reasons set forth herein.

"'[s]tate consumer fraud acts are designed to either protect state residents or protect consumers engaged in transactions within the state.'" *Id.* at 414 (quoting *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 215 (E.D. Pa. 2000)).

Courts in Washington and Texas have recently reached the same conclusion in applying the consumer protection statutes of those states.  In *K.S. v. Ambassador Programs*, the district court cited to a recent decision from the Supreme Court of Washington, which had held that "Washington State Consumer Protection Act claims are available only for Washington citizens." No. CV-08-243-RMP, 2010 WL 1629247, at *1 (E.D. Wash. Apr. 21, 2010) (citing *Schnall v. AT & T Wireless Servs., Inc.*, 225 P.3d 929, 939 (Wash. 2010) ("[T]the CPA only applies to claims brought by persons residing in Washington.")).  Similarly, in *Berry v. Indianapolis Life Insurance Company*, the district court held that it would not "apply Texas state laws where a plaintiff does not allege at least either that ***its*** transaction directly or indirectly impacted Texas or that the defendant is a Texas resident."  600 F. Supp. 2d 805, 823 (N.D. Tex. 2009) (emphasis added).

D.C. courts apply similar tests to determine whether the CPPA should apply to a plaintiff's claims.  *See Shaw v. Marriott Int'l, Inc.*, No. 08-7142, 2010 U.S. App. LEXIS 10969, at *13 (D.C. Cir. May 28, 2010).  Under a "most significant relationship" test, D.C. courts apply the following factors to determine whether D.C. law should apply to a given claim: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and 4) the place where the relationship between the parties is centered.  *See Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 842 (D.C. Cir. 2009).

Similarly, applying a government interests analysis, D.C. courts "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Hercules & Co. v. Shama Rest. Corp.*, 566 A.2d 31, 41 (D.C. 1989).  The District has an interest in protecting its own citizens from being victimized by unfair trade practices.  *Shaw*, 2010 U.S. App. LEXIS 10969, at *14; *see also Williams v. First Gov't Mortgage & Investors Corp.*, 176 F.3d 497, 498 (D.C. Cir. 1999) (holding that D.C. had a significant stake in protecting its citizens from predatory lending practices).  The District also has an interest in regulating the conduct of its business entities.  *Shaw*, 2010 U.S. App. LEXIS 10969, at *14.  But when the plaintiff is not a citizen of the District and the defendant business entities are not located within the District, the District has minimal interest in the resolution of the dispute.  *See id.*

Under either test, the CPPA does not apply.  First, the Plaintiff does not allege that his injury occurred in the District of Columbia.  (*See* Compl. ¶ 5.)  Second, the Plaintiff does not allege that any conduct by Defendants occurred in the District of Columbia.  (*See id.* ¶¶ 19-22.)  Third, none of the parties (including the Plaintiff) is incorporated, is domiciled, has its principle place of business or is a resident in the District of Columbia.  (*See id.* ¶¶ 5, 7-17.)  Fourth, the Plaintiff has alleged no relationship between himself and Defendants, and to the extent the Court can infer a relationship from the alleged purchase by the Plaintiff of hydrogen peroxide, that relationship occurred outside of the District of Columbia based on the allegations in the Complaint.  (*See id.* ¶ 5.)  Applying these four factors, the most significant relationship test mandates that the CPPA not apply to the Plaintiffs' claims.  Similarly, under a government interests analysis, the CPPA cannot apply to Plaintiff's claims.  Because he is not a citizen of the District of Columbia, because he does not allege that he has purchased hydrogen peroxide within

the District and because none of the Defendants is incorporated or has its principle place of business in the District of Columbia, the District has little interest in the resolution of this dispute.  Therefore, the CPPA does not apply to the Plaintiff's claims under this analysis.  *See Shaw*, 2010 U.S. App. LEXIS 10969, at *14.

Accordingly, Mr. Silvious lacks standing to bring a claim under the CPPA on behalf of consumers in the District of Columbia.

**B.    Plaintiff's Claims Under the CPPA Fail Because the Hydrogen Peroxide Sold by Defendants is Not a "Consumer Good" as Defined by the CPPA**

Defendants manufacture highly-concentrated hydrogen peroxide, most often in concentrations of 35%, 50%, and 70%, and in various commercial and industrial grades.  *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 307.  Defendants do not sell the type of hydrogen peroxide purchased by consumers, the 3% hydrogen peroxide solution that is sold over the counter at drug stores.  Here the Plaintiff fails to state a claim under the CPPA because he has not—and cannot—allege that the Defendants manufacture "consumer goods" within the meaning of the statute, or that the Defendants advertised or otherwise promoted their product for sale to consumers.

Plaintiff alleges a right to bring this action under section 3905(k)(1) of the CPPA, which states that "a person … may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a ***trade practice*** in violation of a law of the District of Columbia".  D.C. Code § 28-3905(k)(1) (emphasis added).  However the term "trade practice" is defined elsewhere in the statute to mean "any act which does or would create, alter, repair, furnish, make available, provide information about, *or*, directly or indirectly, solicit, offer for or effectuate, a sale or lease or transfer, of ***consumer goods or services***."  D.C.

7

Code §28-3901(a)(6) (emphasis added).  Thus, for the CPPA to apply, a defendant either has to directly manufacture a "consumer good," or solicit or promote the sale of a consumer good-- neither of which the Defendants did here.

Nowhere in the Complaint does the Plaintiff allege that the hydrogen peroxide that is sold by Defendants, is a "consumer good" as defined in the statute, *i.e.*, one that is **primarily for personal, household, or family use**."  D.C. Code §28-3901(a)(2) (emphasis added).[5]  Nor could the Plaintiff make such an allegation.  The hydrogen peroxide that defendants manufacture and sell is a dangerous, industrial chemical, that, as the Third Circuit has explained, is "used most prominently as a bleach in the pulp and paper industry with smaller amounts appearing in chemicals and laundry products, environmental applications, textiles, and electronics."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 307.  In fact, it is difficult to imagine a "consumer," as defined in the statute, could safely purchase the hydrogen peroxide as manufactured and sold by Defendants.[6]  The CPPA was not intended to, and does not provide a cause of action for merchant-to-merchant transactions.  As the D.C. Court of Appeals has explained, "[t]ransactions along the distribution chain that do not involve the ultimate retail customer are not 'consumer transactions' that the Act seeks to reach.  Rather, it is the ultimate retail transaction between the final distributor and the individual member of the consuming public that the Act covers."  *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C.

---

[5] *See, e.g., Owens v. Curtis*, 432 A.2d 737, 739 (D.C. 1981), ("While the term 'goods and services' is broadly defined, it is qualified by the term 'consumer' which, when used as an adjective, 'describes any-thing, without exception, which is primarily for personal, household, or family use.'"), *superseded by statute on other grounds*, as stated in *DeBerry v. First Government Mortgage & Investors Corp.*, 170 F.3d 1105, 335 (D.C. Cir. 1999)).

[6] Furthermore, Plaintiff admits that the claims at issue are not based upon direct sales by Defendants to consumers, and this fact distinguishes this case from cases such as *Ford v. Chartone, Inc.*, in which the Court ruled that medical records that the defendants directly sold to Plaintiffs' counsel constituted a consumer good under the act.  908 A.2d 72 (D.C. 2006).  The *Chartone* court focused on whether the purchase of medical records for use in a lawsuit was a "personal" use.  908 A.2d at 81-82.  Here, there is no allegation of direct sales by the Defendants to the Plaintiffs or any other consumer.

1989).  Thus, any merchant-to-merchant sales of commercial or industrial chemicals that the

Defendants may have made do not fall under the CPPA, and consequently, the Plaintiff does not

state a claim under the CPPA because the Defendants do not manufacture or sell "consumer

goods" within the meaning of the statute.

        In addition, while the CPPA could apply to a manufacturer that promotes consumer

goods, but does not directly sell consumer goods to consumers, see D.C. Code § 28-3901(a)(6),

there is no allegation here that Defendants promote to consumer the products they manufacture.

Indeed Defendants do *not* solicit, advertise, promote, or in any other way market their industrial

and commercial chemicals for sale to individual consumers.  In *Williams v. The Purdue Pharma

Co.*, the Court discussed the potential liability under the CPPA of manufacturers of a drug who

promoted their products to physicians and patients but who actually sold the product only to

wholesalers.  297 F. Supp. 2d 171 (D.D.C. 2003).  The district court allowed the case to proceed,

based upon the fact that "defendants are alleged to have engaged in persuasive sales activities

vis-à-vis individual consumers."  *Id.* at 175.  The Court, however, cautioned that "[i]f

[defendants] promoted OxyContin only to physicians and other non-patients*,* it might be more

difficult to discern a consumer-merchant relationship." *Id.*   Here, the Plaintiff does not allege

that Defendants in any way marketed or promoted hydrogen peroxide for sale to consumers.

Thus, Plaintiff does not state a claim under the second prong of the CPPA.

        In short, Plaintiff does not allege any activity by the Defendants that would constitute an

unlawful "trade practice" as defined in the CPPA.  Accordingly, the Complaint fails to state a

claim under the CPPA and the Complaint, as amended, should be dismissed.

## II.   THE COMPLAINT SHOULD BE DISMISSED AS TIME-BARRED PURSUANT TO RULE 12(B)(6).

Where it is apparent from the face of the complaint or other publicly available documents that a claim is time-barred, that claim should be dismissed as a matter of law.  *See, e.g.*, *Gordon v. Nat'l Youth Work Alliance*, 675 F.2d 356, 360 (D.C. Cir. 1982) ("the proper method for raising a defense of limitation is a motion under Rule 12(b)(6)"); *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005) ("A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint"); *Aguirre v. SEC*, 671 F. Supp. 2d 113, 117 (D.D.C. 2009) (on a motion to dismiss pursuant to Rule 12(b)(6), courts are not limited to just the facts alleged in the complaint, but may also consider "any documents either attached to or incorporated in the complaint [and]  . . . matters of which [courts] may take judicial notice," including "public records") (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) and *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (internal quotation marks omitted)).  Here, both the facts asserted in the Complaint, as well as the widely known and publicly available information about the alleged hydrogen peroxide price-fixing conspiracy contained in public records, clearly demonstrate that Plaintiff's cause of action should be dismissed as untimely.

### A.   Plaintiff's Claim Is Subject to No More Than a Four-Year Statute of Limitations.

Ordinarily, a three-year statute of limitations under D.C. Code § 12-301 applies to CCPA claims if no complaint is lodged with the Department of Consumer and Regulatory Affairs.  *See* D.C. Code § 12-301(8); *see also Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 48 (D.D.C. 2006) (citing D.C. Code § 12-301(8)); *Dist. Cablevision*

*Ltd. P'ship v. Bassin*, 828 A.2d 714, 729 (D.C. 2003) (applying three-year residual statute of limitations to plaintiffs' cause of action under the CPPA); *Smith v. Brown & Williamson Tobacco Corp.*, 108 F. Supp. 2d 12, 14 (D.D.C. 2000) (same).

However, in certain circumstances, it may be possible for a plaintiff to obtain the benefit of a longer limitations period when a cause of action relies upon or is "intertwined" with another cause of action. *See, e.g.*, *Johnson*, 451 F. Supp. 2d. at 48 ("Under D.C. law, '[w]hen a cause of action with no prescribed statute of limitations is intertwined with one having a prescribed limitations period, District of Columbia courts apply the prescribed period.") (quoting *Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002)). "A claim is 'intertwined' with another when it is 'completely dependent' on or essentially the same as another, and cannot survive as a separate, independent cause of action." *Johnson*, 451 F. Supp. 2d. at 48 (quoting *Thomas v. News World Commc'ns*, 681 F. Supp. 55, 73 (D.D.C. 1988)). To the extent it is determined that Plaintiff's CPPA claim is intertwined with his underlying allegation that defendants violated the D.C. Antitrust Act, D.C. Code § 28-4501 *et. seq.*, then the four-year prescribed limitations period under the D.C. Antitrust Act may apply. *See* D.C. Code § 28-4511(b) ("An action under section 28-4507 or 28-4508 to recover damages is barred if the action is not commenced within four (4) years after the cause of action accrues . . . ."). Regardless of whether a three- or four-year statute of limitations applies, the Plaintiff's claim is clearly time-barred as a matter of law.

### B.     Plaintiff's Claim Accrued and the Limitations Period Commenced More Than Five Years Ago.

As a general rule under District of Columbia law, "a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001) (citation omitted). In this case, the Plaintiff alleges his injury occurred when he and the general public were sold hydrogen peroxide during "the period

between October 19, 2000 and January 31, 2005." (Compl. ¶ 18.)  Put differently, the Plaintiff's

injury, as alleged, occurred no later than January 31, 2005, which is more than five years before

he filed his Complaint on May 3, 2010.

In some cases, however, if the relationship between the fact of injury and the alleged

wrongdoing is "obscure," then the so-called "discovery rule" applies to the accrual of plaintiff's

claim and the commencement of the limitations period.  *See Johnson*, 451 F. Supp. 2d. at 41.

The discovery rule provides that "the statute of limitations will not run until plaintiffs know or

reasonably should have known that they suffered injury due to the defendants' wrongdoing." *Id.*

(quoting *Colbert v. Georgetown Univ.*, 641 A.2d 469, 473 (D.C. 1994)).  Under District of

Columbia law, the question of whether the plaintiff knew or should have known about a

potential claim is assessed using an "objective 'reasonable person' standard." *Hendel v. World*

*Plan Executive Council*, 705 A.2d 656, 661 n.5 (D.C. 1997); *see also Jacobsen v. Oliver*, 201 F.

Supp. 2d 93, 109 (D.D.C. 2002) (stating that the Court employs an objective standard in

evaluating whether the plaintiffs were on inquiry notice of their claims for purposes of the statute

of limitations accrual date).  As further explained by the Court in *Hendel*,

> The discovery rule does not, however, give the plaintiff carte
> blanche to defer legal action indefinitely if she knows or should
> know that she may have suffered injury and that the defendant may
> have caused her harm. Indeed, a right of action may accrue before
> the plaintiff becomes aware of all of the relevant facts. 'It is not
> necessary that all or even the greater part of the damages ... occur
> before the [right] of action arises.'

*Hendel*, 705 A.2d at 661 (quoting *Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C. 1989) (citation

omitted)).

On February 11, 2005, the first of forty-five lawsuits was filed against the Defendants for

the same acts of price-fixing as alleged here.  (*See* chart of Hydrogen Peroxide Price-fixing

Cases Brought in 2005, below.)  Now, more than five years later, the Plaintiff seeks to piggy-

back on those claims.  The Plaintiff, however, is too late under District of Columbia law, and as a

result, his claims must be dismissed as time-barred.


### Hydrogen Peroxide Price-fixing Cases Brought in 2005

| Date Filed | Caption | Description |
| --- | --- | --- |
| 2/11/05 | *Finch Pruyn & Co., Inc. v. Atofina Chems., Inc.*, No. 05-666 (E.D. Pa.) | direct purchaser action; became lead case in *In re Hydrogen Peroxide Antitrust Litig.* |
| 2/14/05 | *Renick v. Atofina Chems., Inc.*, CGC-05-438652 (S.F. Super. Ct., Cal.) | indirect purchaser action; stayed pending resolution of indirect purchaser action in *In re Hydrogen Peroxide Antitrust Litig.* |
| 2/15/05 | *Philion v. Atofina Chems., Inc.*, BC328789 (L.A. Super. Ct., Cal.) | indirect purchaser action; stayed pending resolution of indirect purchaser action in *In re Hydrogen Peroxide Antitrust Litig.* |
| 2/16/05 | *Armstrong v. Atofina Chems., Inc.*, S-183-05 CWC (Chittenden Super. Ct., Vt.) | indirect purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* and Armstrong was named as plaintiff in indirect purchaser action second consolidated amended class action complaint |
| 2/16/05 | *Diamond Chem. Co., Inc. v. Degussa Corp.*, 05-0711 (N.D. Cal.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 2/16/05 | *Immerman v. Atofina Chems., Inc.* CV 05 554935 (Oh. Ct. Com. Pl., Cuyahoga Cty.) | indirect purchaser action; voluntarily dismissed on 11/3/05 |
| 2/17/05 | *Muzzey v. Atofina Chems., Inc.*, C1 05 129 (Dist. Ct. of Scotts Bluff Cty., Neb.) | indirect purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* and Muzzey was named as plaintiff in indirect purchaser action second consolidated amended class action complaint |
| 2/17/05 | *Sackmann v. Atofina Chems., Inc., et al.*, CGC-05-438785 (S.F. Super. Ct., Cal.) | indirect purchaser action; stayed pending resolution of indirect purchaser action in *In re Hydrogen Peroxide Antitrust Litig.* |
| 2/17/05 | *Smith v. Atofina Chems., Inc.*, CGC-05-438778 (S.F. Super. Ct., Cal.) | indirect purchaser action; stayed pending resolution of indirect purchaser action in *In re Hydrogen Peroxide Antitrust Litig.* |
| 2/23/05 | *Ohio Chem. Services, Inc. v. Atofina Chems., Inc.*, 05-839 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 2/24/05 | *Astro Chems., Inc. v. Atofina Chems., Inc.*, 05-854 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 2/24/05 | *Pacific v. Atofina Chems., Inc.*, 05-858 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |

| Date Filed | Caption | Description |
|---|---|---|
| 2/25/05 | *Emco Chem. Distribs., Inc. v. Atofina Chems., Inc.,* 05-874 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 2/28/05 | *Northern Chem. Corp. v. Atofina Chems., Inc.,* 05-969 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/2/05 | *Lincoln Paper & Tissue, LLC v. Atofina Chems., Inc.,* 05-966 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/3/05 | *American Fiber Resources Int'l v. Degussa Corp.,* 05-918 (N.D. Cal.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/4/05 | *Chem/Serv, Inc. v. Atofina Chems., Inc.,* 05-1061 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/4/05 | *Riverside Chems., Inc. v. Atofina Chems., Inc.,* 05-938 (N.D. Cal.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/8/05 | *BHS Mkg., LLC, v. Degussa Corp.,* 05-985 (N.D. Cal.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/9/05 | *Artco Chem., Inc. v. Atofina Chems., Inc.,* 05-1128 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/10/05 | *Thatcher Co. v. Degussa Corp.,* 05-1021 (N.D. Cal.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/14/05 | *Norman, Fox & Co. v. Degussa Corp.,* 05-1046 (N.D. Cal.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/15/05 | *Pacifica Chem. Inc. v. Atofina Chems., Inc.,* 05-1079 (N.D. Cal.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/15/05 | *Seeler Indus., Inc. v. Degussa Corp.,* 05-1077 (N.D. Cal.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/18/05 | *Roberts Chem. Co., Inc. v. Atofina Chems., Inc.,* 05-1267 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/18/05 | *Safer Textile Processing Corp. v. Atofina Chems., Inc.,* 05-1265 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/18/05 | *Young Chem. Co. v. Akzo Nobel Chems. Int'l BV,* 05-1287 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/22/05 | *City of Stockton v. Solvay Interox, Inc.,* CV026011 (San Joaquin County Super. Ct., Cal.) | indirect purchaser action; stayed pending resolution of indirect purchaser action in *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/23/05 | *Lensco Products, Inc. v. Atofina Chems., Inc.,* 05-1338 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/23/05 | *Atlantis Caribbean Chem. Corp. v. Atofina Chems., Inc.,* 05-1340 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/23/05 | *Standard Tech. Applied Resources, Inc. v. Atofina Chems., Inc.,* 05-1339 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |

| Date Filed | Caption | Description |
|---|---|---|
| 3/29/05 | *Borden & Remington Corp. v. Akzo Nobel Chems. Int'l BV*, 05-1458 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/30/05 | *Central Marin Sanitation Agency v. FMC Corp.*, 05-1284 (N.D. Cal.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 3/31/05 | *City of Philadelphia v. Atofina Chems., Inc.*, 05-1488 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 4/11/05 | *Interstate Chem. Co., Inc. v. Akzo Nobel Chems. Int'l BV*, 05-1648 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 4/13/05 | *The Borough of Middletown and The Middletown Borough Authority v. Atofina Chems., Inc.*, 05-1716 (E.D. Pa.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 4/27/05 | *Captree Chem. Corp. v. Degussa Corp.*, 05-1757 (N.D. Cal.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 4/28/05 | *Mississippi River Corp. v. Degussa Corp.*, 05-1769 (N.D. Cal.) | direct purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* |
| 5/4/05 | *Tsar v. Degussa*, L-3977-05 (N.J. Super. Ct., Essex Cty. Law Div.) | indirect purchaser action; voluntarily dismissed 8/4/05 |
| 5/20/05 | *Hux v. Atofina Chems., Inc.*, 05-2392 (E.D. Pa.) | residual purchaser action (previously filed in state court in Tennessee on 2/17/05); voluntarily dismissed on 10/12/05 so that plaintiff could file consolidated amended class action complaint in *In re Hydrogen Peroxide Antitrust Litig.* |
| 6/13/05 | *Loadholdt v. Atofina Chems., Inc.*, 05-CP-06-049 (S.C. Ct. Com. Pl.) | indirect purchaser action; voluntarily dismissed on 11/3/05 |
| 7/29/05 | *Colorfast Dye & Printhouse, Inc. v. Atofina Chems., Inc.*, 05-4067 (E.D. Pa.) | indirect purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* and Colorfast Dye & Printhouse, Inc. was named as plaintiff in indirect purchaser action second consolidated amended class action complaint |
| 8/5/05 | *Bernard Lawrence Winery v. Atofina Chems., Inc.*, 05-4196 (E.D. Pa.) | indirect purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* and Bernard Lawrence Winery was named as plaintiff in indirect purchaser action second consolidated amended class action complaint |
| 8/9/05 | *City of Stockton v. Atofina Chems., Inc.*, 05-4241 (E.D. Pa.) | indirect purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* and City of Stockton was named as plaintiff in indirect purchaser action second consolidated amended class action complaint |

| Date Filed | Caption | Description |
|---|---|---|
| 11/8/05 | *Orange County Sanitation District v. FMC Corp.*, 05-5884 (E.D. Pa.) | indirect purchaser action; action was consolidated into *In re Hydrogen Peroxide Antitrust Litig.* and Orange County Sanitation District was named as plaintiff in indirect purchaser action second consolidated amended class action complaint |

Here, what the Plaintiff seeks is "carte blanche" to defer legal action that should have been brought five years ago. *Cf. Hendel*, 705 A.2d at 661. Instead, the application of an objective reasonable person standard establishes that, if forty-five other parties became "aware of all the relevant facts" and were able to bring suit for the same cause of action five years ago, so too should the Plaintiff. *Id.*

In addition to, and surrounding these forty-five other lawsuits, there were numerous other events that put the Plaintiff on constructive notice of the basis for his claims. Those events include:

- *February 9, 2005* - Public filing with the Securities and Exchange Commission ("SEC") in which defendant FMC discloses that a grand jury investigation has been commenced regarding antitrust violations in the hydrogen peroxide industry. (attached hereto as Exhibit D).[7]

- *February 10, 2005* - Publication of an article in the *Philadelphia Inquirer* regarding FMC's SEC filing and the existence of the grand jury investigation. (attached hereto as Exhibit E).[8]

- *February 11, 2005* - The first of forty-five separate lawsuits to be filed in 2005 regarding price-fixing in the hydrogen peroxide industry. (*See* chart, above).

- *January 13, 2006* - Public filing of Evonik Degussa's Answer to the Direct Purchasers' Consolidated Amended Class Action Complaint in which Evonik Degussa admits that it is participating in the DOJ's Leniency Program in connection with the hydrogen peroxide grand jury investigation. (attached hereto as Exhibit F).[9]

---

[7] FMC Corp., Item 7.01. Regulation FD Disclosure (Form 8-K), at 1 (Feb. 9, 2005), *available at* http://www.sec.gov/Archives/edgar/data/37785/000119312505023600/d8k.htm.

[8] *Business News in Brief; EC Raises Antitrust Concerns with FMC Corp., other firms*, PHILADELPHIA INQUIRER, Feb. 10, 2005, at C03; *see also Breaking News Roundup; FMC Under Investigation for H2O2*, ICIS.com, Feb 14, 2005.

[9] Answer and Additional Defenses of Degussa Corporation and Degussa A.G. to Consolidated Amended Class Action Complaint, *In re Hydrogen Peroxide Antitrust Litig.*, Civ. A. No. 05-666, MDL Docket No. 1682 (E.D. Pa. Jan. 13, 2006).

- **March 14, 2006** - Public disclosure of criminal indictments of defendants Solvay and Akzo as part of the hydrogen peroxide grand jury investigation.  (attached hereto as Exhibits G and H).[10]

- **March 22, 2006** - Public filing of motion to establish procedures for identifying and notifying direct purchasers of the price-fixing conspiracy. (attached hereto as Exhibit I).[11]

- **April 5, 2006** - Public filing of Joint Sentencing Memorandum for Solvay's plea agreement with the DOJ.  (attached hereto as Exhibit J).[12]

- **April 20, 2006** - Public filing of the Solvay plea agreement.  (attached hereto as Exhibit K).[13]

Taken individually, any one of these events should have triggered a duty to investigate, and put the Plaintiff on constructive notice of his potential claims.[14]   Specifically, the February 2005 public disclosure of a grand jury investigation of the hydrogen peroxide industry should have prompted the Plaintiff to investigate his potential claims.  Notably, only one day after the publication of an article in the *Philadelphia Inquirer* about the grand jury investigation, the first of the forty-five plaintiffs were able to ascertain the basis for their claims and file suit against the

---

[10] Information, *United States v. Solvay S.A.*, No. 06cr0159 (N.D. Ca. Mar. 14, 2010), *available at* http://www.justice.gov/atr/cases/f215000/215059.pdf; Information, *United States v. Akzo Nobel Chemicals Int'l B.V.*, No.06cr0160 (N.D. Ca. Mar. 14, 2010), *available at* http://www.justice.gov/atr/cases/f215000/215060.pdf.

[11] Motion to Establish Procedures for Crime Victim Notification Pursuant, to 18 U.S.C. § 3771, *United States v. Solvay S.A.*, No. 06cr0159, *United States v. Akzo Nobel Chemicals Int'l B.V.*, No. 06cr0160 (N.D. Ca. Mar. 22, 2010), *available at* http://www.justice.gov/atr/cases/f215400/215473.pdf; Order Establishing Procedures for Crime Victim Notification Pursuant, to 18 U.S.C. § 3771, *United States v. Solvay S.A.*, No. 06cr0159, *United States v. Akzo Nobel Chemicals Int'l B.V.*, No. 06cr0160 (N.D. Ca. Mar. 24, 2010), *available at* http://www.justice.gov/atr/cases/f215400/215474.pdf.

[12] United States and Solvay S.A.'s Joint Sentencing Memorandum, *United States v. Solvay S.A.*, No. 06cr0159 (N.D. Ca. April 5, 2010), *available at* http://www.justice.gov/atr/cases/f216100/216144.pdf.

[13] Plea Agreement, *United States v. Solvay S.A.*, No. 06cr0159 (N.D. Ca. April 20, 2010), *available at* http://www.justice.gov/atr/cases/f216000/216082.pdf.

[14] *See, e.g.*, *Bussineau v. President & Directors of Georgetown College*, 518 A.2d 423, 435 (D.C. 1986) ("For a cause of action to accrue where the discovery rule is applicable, one must know *or by the exercise of reasonable diligence should know* (1) of the injury, (2) its cause in fact, and (3) of some evidence of wrongdoing.") (Emphasis added); *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996) ("'[A]ctual notice' is that notice which a plaintiff actually possesses; 'inquiry notice' is *that notice which a plaintiff would have possessed after due investigation*.") (Emphasis added); *Jacobsen*, 201 F. Supp. 2d at 109-12 (explaining that plaintiffs were capable of discovering their own cause of action "*through reasonable investigation*" of relevant statutory law, and stating that a similar claim to their own was a "matter of public record" and they were obligated to "*exercise reasonable diligence to learn of its contents*") (Emphasis added).

Defendants.  *See Mullin*, 785 A.2d at 299-300 (holding that distribution of publicly available weekly periodical triggered the running of the statute of limitations on defamation claim).  By January 2006, one of the defendants, Evonik Degussa, publicly admitted that it had participated in the price-fixing conspiracy as part of the MDL litigation, and in April 2006, another Defendant, Solvay, publicly entered a plea agreement and paid a fine totaling more than $40 million.  Notably, the Plaintiff cites to both the MDL proceeding and the Solvay plea agreement in his Complaint in order to support his claim.  (Compl. ¶¶ 21-22, 24.).  If a guilty plea and public admission of price-fixing by two Defendants does not trigger a duty to investigate, it is difficult to see what would.[15]

Viewed collectively, these events undoubtedly provided Plaintiff with sufficient information to reasonably ascertain the basis for his claims well before May 3, 2006 (*i.e.*, four years before he filed the Complaint), as they did for the forty-five other plaintiffs that filed suit in 2005.  This Court's opinion in *Jacobsen v. Oliver* is particularly instructive here because plaintiffs in that case were found to be on constructive notice of their cause of action based upon a prior lawsuit involving facts similar to their own.  *Jacobsen*, 201 F. Supp. 2d at 109-112.  As explained by this Court, the prior case was a "matter[ ] of public record" and they were obligated to "exercise reasonable diligence to learn of its contents."  *Id.* at 111.  Likewise, the plaintiffs in *Jacobsen* were capable of discovering their own cause of action "through reasonable investigation" of relevant statutory law.  *Id.* at 112.  Here, knowledge of the alleged price-fixing in the hydrogen peroxide industry was certainly public information in 2005, as evidenced by the forty-five separate lawsuits that were filed that year.  Moreover, if the statute of limitations is to have any meaning at all, a Defendant's public admission of price-fixing and another Defendant's

---

[15] *Cf. In re Hydrogen Peroxide Antitrust Litig.*, Civ. A. No. 05-666, Slip Op. at 4 (E.D. Pa. Mar. 16, 2010) (finding that the three-year statute of limitations was triggered by plaintiff's admission that the April 20, 2006 disclosure of Solvay's plea agreement "was the earliest date on which [plaintiff] could have discovered its claims").

public plea agreement must have put the Plaintiff on inquiry notice of his claims and triggered the running of the of the limitations period.  Because the Plaintiff waited more than four years after these admissions to file suit, and over five years after other lawsuits were filed for the same price-fixing conspiracy, the Plaintiff's claims should be dismissed as time-barred.

## CONCLUSION

For the reasons stated above, the Court should grant the Domestic Defendants' Motion, and dismiss with prejudice the Plaintiff's claims, in their entirety, because (1) Plaintiff lacks standing to pursue his cause of action under the CPPA, and (2) even if he had standing, his cause of action is time-barred.

Dated:  June 16, 2010                              Respectfully submitted,


  /s/ Kevin D. Feder_____
Michael E. Antalics (D.C. Bar No. 475218)
mantalics@omm.com
William T. Buffaloe (D.C. Bar No. 476929)
wbuffaloe@omm.com
Kevin D. Feder (D.C. Bar No. 986131)
kfeder@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
T: (202) 383-5300
F: (202) 383-5414
**Counsel for Defendant Evonik Degussa Corp.**

Katherine A. Allen (D.C. Bar No. 502453)
katherine.allen@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, NW, Suite 300
Washington, DC 20006
T: (202) 452-5483
F: (202) 452-7989
**Counsel for Defendant Arkema Inc.**
**(f/k/a Atofina Chemicals Inc.)**

Paul H. Friedman (DC Bar No. 290635)
paul.friedman@dechert.com
DECHERT LLP
1775 Eye Street NW
Washington, DC  20006
P: (202) 261-3398
F: (202) 261-3098
***Counsel for Defendant FMC Corporation***

D. Jarrett Arp (D.C. Bar No 444201)
jarp@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
T: (202) 298-5700
F: (202) 298-5907
***Counsel for Defendants EKA Chemicals, Inc. and***
***Akzo Nobel, Inc.***

Bradley P. Smith (D.C. Bar No. 468060)
smithbr@sullcrom.com
SULLIVAN & CROMWELL, LLP
125 Broad Street
New York, NY 10004-2498
P: (212) 558-4000
F: (212) 558-3588
***Counsel for Defendants Solvay America, Inc. and***
***Solvay Chemicals, Inc.***

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

OWEN F. SILVIOUS,

                        Plaintiff,

        v.

AKZO NOBLE, INC., et al.,

                        Defendants.

Civil Case No. 10cv0969-JDB

The Hon. John D. Bates

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2010, the foregoing **Motion to Dismiss and Memorandum of Points and Authorities in Support of the Domestic Defendants' Motion to Dismiss** was filed electronically with United States District Court for the District of Columbia using the Court's ECF system.  I also certify that a copy of the foregoing, including all exhibits, was served via First Class Mail on:

> Owen F. Silvious
> 16497077 FCI-2 Butner
> P.O. Box 1500
> Butner, NC 27509

        /s/ Kevin D. Feder
Kevin D. Feder (D.C. Bar # 986131)
kfeder@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20006
T: (202) 383-5300
F: (202) 383-5414
*Counsel for Defendant Evonik Degussa Corp.*